Ronald Wilcox (SBN 176601)
Attorney at Law
1900 The Alameda, Suite 530
San Jose, CA 95126
Tel: (408) 296-0400
Fax: (4-8) 296-0486

Andre L. Verdun (SBN 265436)
**CROWLEY LAW GROUP**
401 West "A" Street, Ste. 925
San Diego, CA 92101
Tel. (619) 238-5700
Fax. (866) 786-6993
AndreVerdun@CrowleyLawGroup.com

Attorneys for Plaintiff
Mark Rubenstein

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **MARK RUBENSTEIN,** an individual,<br><br>    Plaintiff,<br><br>vs.<br><br>**S.D.A.R., INC.,** an corporation doing business as **SAN DIEGO AUTO RECOVERY**, and **TREVOR ARLIE PRATT** and **DOES 1-10**,<br><br>    Defendants. | Case No.: **'13CV0106 MMA KSC**<br><br>**COMPLAINT FOR DAMAGES** |

Plaintiff, Mark RUBINSTEIN, alleges the following:

## INTRODUCTION

1. PLAINTIFF entered into a loan agreement with Trading Financial Credit LLC ("TRADEFINANCIAL"), which he paid promptly by telephone for four months, until a fire at TRADEFINANCIAL triggered the need for a new temporary method of payment. After a verbal agreement to new terms of payment, PLAINTIFF was surprised to discover PRATT towing service at his home with the intention to tow off his vehicle. Upon confronting PRATT that he and TRADFINANCIAL had reached an agreement regarding

-1-
COMPLAINT FOR DAMAGES

Rubinstein v. S.D.A.R., INC.

1 payment, he approached the vehicle and was physically pushed aside by a PRATT employee. After a physical altercation and scuffle, PLAINTIFF managed to enter the vehicle and drive away, while the PRATT employee was beating on the windows of the vehicle and threatening to return for PLAINTIFF and vehicle. This confrontation left PLAINTIFF in such a state of mental anguish, that he was emotionally distressed each time any car drove near his property thereafter, thinking it could be PRATT.

2. Defendant's wrongful conduct caused Mr. RUBINSTEIN actual damages, in the form of serious and severe physical and emotional distress, including not but limited to emotional distress, diarrhea, change in appetite, anxiety, tension, aggravation, headaches, nausea, loss of sleep, frustration, crying spells, hand tremors, and shaking limbs.

3. According to 15 U.S.C. §1692:

(a) There is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors. Abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to **invasions of individual privacy.**

(b) Existing laws and procedures for redressing these injuries are inadequate to protect consumers.

(c) Means other than misrepresentation or other abusive debt collection practices are available for the effective collection of debts.

(d) Abusive debt collection practices are carried on to a substantial extent in interstate commerce and through means and instrumentalities of such commerce. Even where abusive debt collection practices are purely intrastate in character, they nevertheless directly affect interstate commerce.

(e) It is the purpose of this title to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.

///

///

# PARTIES

4. MARK RUBINSTEIN ("Plaintiff") is, and at all times herein mentioned was, a natural person residing in the State of California, County of San Diego. Plaintiff is a consumer as defined by 15 U.S.C. 1692a(3).

5. S.D.A.R., INC., (SDAR) doing business as, SAN DIEGO AUTO RECOVERY is, and at all times herein mentioned was, a corporation which lawfully conducts business in the State of California. SDAR is licensed with the California Bureau of Security and Investigative Services as a repossessor, license 598. SDAR's conduct is regulated by the Fair Debt Collection Practices Act codified under Title 15 USC 1692 *et seq*. And Defendant is subject to 15 U.S.C. 1692f(6).

6. TREVOR ARLIE PRATT (PRATT) is an employee of SDAR and is licensed as an employee of a repossessor agency, license number 510677. PRATT's conduct is regulated by the Fair Debt Collection Practices Act codified under Title 15 USC 1692 *et seq*. Defendant is subject to 15 U.S.C. 1692f(6).

7. Defendant and defendants refer to all defendants, name and unnamed, as plaintiff alleges each are jointly and severally liable for the conduct alleged herein.

8. The true names and capacities, whether individual, corporate, associate, or otherwise, of defendants DOES 1-50 inclusive, are unknown to plaintiff who, therefore, sues said defendants by such fictitious names. Plaintiff will amend this complaint to show their true names and capacities when ascertained. Plaintiff is informed and believes, and thereon alleges, that each of said defendants is responsible in some manner for the events and happenings, and proximately caused the injuries and damages, hereinafter alleged.

9. Plaintiff is informed and believes, and upon such information and belief, alleges that each of the Defendants, fictitious or named herein, are the principals, agents or employees of the other Defendants and that, all acts of said agents and employees were ratified by their principals, and/or that Defendants negligently hired or otherwise

1. engaged the services of each other.

10. Plaintiff will file an amended complaint if the true names and capacities of other now unknown defendants, whether individual, corporate, associate, or otherwise become known to plaintiff.

## JURISDICTION

11. Jurisdiction of this court arises pursuant to 28 U.S.C. § 1331, 15 U.S.C. § 1692(k), and 28 U.S.C. § 1367 for supplemental state claims.

12. This action arises out of the defendants' violations of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 et seq. ("FDCPA"), along with supplemental state claims.

13. Since defendants do business within California, there is personal jurisdiction.

## VENUE

14. Venue is proper pursuant to 28 U.S.C. § 1391.

15. At all times relevant, the defendants conducted business within the State of California.

## FACTUAL ALLEGATIONS

16. Plaintiff took out an auto-title loan with TRADING FINANCIAL. The loan was for personal, family or household purposes. Prior to October 15, 2012, the loan had always been paid by telephone.

17. Prior to October of 2012, RUBINSTEIN knew of no other way to process payments other than by telephone.

18. On or about early October 2012, RUBINSTEIN called TRADING FINANCIAL to make his October loan payment, but he received no answer. Eager to meet his financial obligations, RUBINSTEIN continued to call TRADING FINANCIAL but was still unable to reach anyone by phone.

19. On or about October 15, 2012, RUBINSTEIN sent an email to TRADING FINANCIAL stating:

> I have been trying to reach you to make a payment. Please call me 619-988-****. (Phone number redacted for privacy)

20. On or about October 19, 2012, RUBINSTEIN sent an email to TRADING FINANCIAL stating:

> I have been trying to make a payment for 2 weeks and can not reach anyone at your office. I call the 1 800 number but know one answers and I have tried calling back the another [sic] number left on my voicemail and it rings busy all the time. Can you please call me back. I want to pay by check over the phone again.

21. On or about November 6, 2012 RUBINSTEIN visited, in person, "PAYDAY YOUR WAY", which is the San Diego business office where RUBINSTEIN originally signed the TRADING FINANCAL loan agreement and told PAYDAY YOUR WAY that he was having trouble reaching someone by telephone. At this point, he was informed that there was a fire at the Los Angeles TRADING FINANCIAL office.

22. On or about November 6, 2012 RUBINSTEIN finally reached TRADING FINANICAL by telephone at 12:44 PM (213-201-2100) and he told TRADING FINANCIAL that he, RUBINSTEIN, wanted to process a payment. TRADING FINANCIAL told him that he had to process the payment by MONEYGRAM because they were not able to process telephone payments at that time.

23. RUBINSTEIN told TRADING FINANICAL that he would process the payment by MONEYGRAM, but that it could not be done that day, but rather, the payment would be processed on November 9th, 2012. TRADING FINANICAL said that was acceptable and the call was mutually terminated.

24. On or about the night of November 6, 2012 and in the early morning hours of November 7, 2012, RUBINSTEIN and his roommate JESSE HALLETT were at their home with HALLETT's girlfriend, Melisa.

25. RUBINSTEIN and HALLETT were in the kitchen talking, when RUBINSTEIN noticed bright lights emanating through the window of the kitchen and heard the backup

1 alarm of a vehicle. He could see there was activity concerning a tow truck in front of his
2 home. Since RUBINSTEIN's vehicle was parked directly in front of his house,
3 RUBINSTEIN immediately became concerned the driver of the tow truck was attempting
4
5 to repossess his vehicle.

6     26. The tow truck was being driven by PRATT.

7     27. RUBINSTEIN and HALLET immediately left their home and ran towards the tow
8 truck. RUBINSTEIN and HALLET noticed that the tow truck's stinger was on the ground
9 but not facing nor touching RUBINSTEIN's vehicle. RUBINSTEIN shouted at PRATT
10 that he had an agreement with TRADEFINANCIAL to pay the loan by Friday via
11 MONEYGRAM, at which point, PRATT became immediately aggressive and told
12 RUBINSTEIN that he was taking the vehicle no matter what.

13     28. PRATT then swung the stinger using the control panel of the tow truck towards
14 RUBINSTEIN and HALLET and the vehicle which almost hit HALLET in the legs. Both
15 RUBINSTEIN and HALLET were fearful that they would be injured by the stinger.
16 HALLET, who was closer to the stinger, kicked it away from the vehicle and himself.

17     29. PRATT, who was previously standing by the tow truck controls, repositioned
18 himself between RUBINSTEIN's vehicle and where RUBINSTEIN and HALLET were
19 standing, which was next to RUBINSTEIN's driver door. PRATT was blocking the
20 entrance into the vehicle's driver door. RUBINSTEIN demanded that PRATT allow him
21 to get into the vehicle and get out of his way.

22     30. HALLETT, who is a former tow truck driver, told PRATT to calm down and
23 informed PRATT that since he has not hooked up the vehicle, he was not permitted to
24 take it because RUBINSTEIN was revoking PRATT's right to take the vehicle and
25 because he is causing a disturbance, i.e. a breach of the peace.

26     31. A loud verbal altercation ensued between the three parties. HALLETT told
27 RUBINSTEIN to just get into the car and leave, because he doesn't have a right to take
28 it since he is not hooked up to it. RUBINSTEIN did what HALLETT said and attempted

1 to enter the vehicle so that he could leave as to end the conflict.

2 32. RUBINSTEIN reached for the driver side door to open the vehicle. As RUBINSTEIN reached for the door PRATT pushed RUBINSTEIN away from the driver door and said something to the effect of "You are not getting into this fucking car". HALLETT told PRATT to move and PRATT stated "I am not moving" and leaned his body in front of the driver door so no one can enter the vehicle. HALLET responded with something to the effect of "Yes, you are" and shoved PRATT out of the way.

9 33. PRATT started screaming at HALLET while RUBINSTEIN regained his composure. RUBINSTEIN eventually managed to open the driver door and slide into his vehicle; however escape was not easy. RUBINSTEIN had one vehicle directly in front of him, another vehicle directly behind him, and the tow truck was to the left of RUBINSTEIN (facing the wrong way in on-coming traffic). To the right was the curb.

14 34. RUBINSTEIN turned on the vehicle and PRATT started yelling at RUBINSTEIN to get out of the vehicle. It took approximately 30 seconds for RUBINSTEIN to maneuver the vehicle out of the spot.

17 35. As RUBINSTEIN started to attempt to maneuver the vehicle, PRATT moved over to the tow truck control panel and attempted to disable the vehicle's movement by placing the tow truck stringer under the vehicle. While this was happening, PRATT and HALLETT were yelling at each other. HALLETT was screaming at PRATT to let RUBINSTEIN leave and he was creating a dangerous situation.

22 36. RUBINSTEIN got his cell phone out and called 9-1-1. PRATT, unable to block RUBINSTEIN, ran over to RUBINSTEIN's car and started punching RUBINSTEIN's window and screaming at RUBINSTEIN, yelling he would be returning to get RUBINSTEIN and take his car. RUBINSTEIN understood this as a threat of violence to him personally.

27 37. As RUBINSTEIN started to exit the spot where he was parked, the stinger that PRATT attempted to use to block RUBINSTEIN's vehicle caught the wheel of

1   RUBINSTEIN's vehicle and tore off his hubcap.

2   38. RUBINSTEIN was finally able to maneuver himself free and drive away. After
3   RUBINSTEIN was able to escape, HALLETT went inside to end the conflict. After things
4   had time to settle down, HALLETT went outside to retrieve the hubcap. He noticed that
5   PRATT was still waiting outside.

7   39. The 911 dispatcher stated to RUBINSTEIN that if he was no longer at the scene,
8   the matter should be handled civilly.

9   40. While in route to his mother's house, RUBINSTEIN received a telephone call on
10  his cellular phone from the San Diego Police Department. They instructed Mr.
11  RUBINSTEIN to return to his house.

12  41. Mr. RUBINSTEIN returned to the house as instructed by the police, where
13  PRATT was waiting.

14  42. HALLETT, RUBINSTEIN, and PRATT all spoke with police. PRATT spoke with
15  police first. After the police were finished speaking with PRATT, they talked to HALLET
16  and RUBINSTEIN. The Police told RUBINSTEIN that PRATT wanted to file battery
17  charges. RUBINSTEIN stated if that was the case, he would also file criminal battery
18  charges. The police said if that was the case, everyone was going to go to jail, but they
19  would talk to PRATT to see if he wanted to do that. Moments later, the police said that
20  no charges were going to be pressed and released everyone.

21  43. RUBINSTEIN went back into his home where he attempted to sleep. However,
22  he started feeling nauseous and every time a car came by, he feared PRATT had
23  returned.

24  44. HALLETT and his girlfriend Melisa attempted to calm RUBINSTEIN.

25  45. RUBINSTEIN was not able to sleep. The next day RUBINSTEIN remained at
26  home all day on "look out", concerned that PRATT or someone PRATT sent would
27  return to harm him or take the vehicle. That night, RUBINSTEIN decided to go to his
28  mom's house in order to try to get some sleep.

46. RUBINSTEIN was so upset when he arrived that his mother was concerned he might have a heart attack. When RUBINSTEIN's mother attempted to find out what was making RUBINSTEIN so upset, he broke down and cried but would not tell his mother what had happened.  RUBINSTEIN's mom remembers he was distraught and shaking and became very concerned for RUBINSTEIN's wellbeing.

47. RUBINSTEIN's mother gave RUBINSTEIN a dose of her prescription medication in order to help her son clam down. Only with medication RUBINSTEIN was able to sleep.

48. For days following the incident, RUBINSTEIN was obsessed with the incident and every time a car drove near the house, he was concerned it was PRATT returning to cause more problems. He was not able to sleep normal for a period of time following the incident. During that peroid, RUBINSTEIN remained stressed; he experienced a hard time making himself eat and suffered from diarrhea.

49. RUBINSTEIN was eventually able to borrow the money to pay off the loan with TRADING FINANICAL.

## FIRST CAUSE OF ACTION – FDCPA

50. Plaintiff repeats, re-alleges, and incorporates by reference all of the paragraphs above as though fully stated herein.

51. Defendants violated 15 U.S.C. § 1692 et seq., including but not limited to 15 U.S.C. § 1692f(6), for their wrongful repossession.

52. Defendants are debt collectors pursuant to 15 U.S.C. § 1692(a) and subject to 15 U.S.C. § 1692f(6).

53. Defendants were attempting to recover property subject to 15 U.S.C. § 1692f(6).

54. Defendant used unfair and unconscionable means in an attempt to collect a debt, and breached the peace, and threatened/attempted to take non-judicial action to effect dispossession of property, despite having no present right to possession of the property, in violation of 15 U.S.C. §1692f(6).

55. Plaintiff is entitled to recover statutory damages, actual damages, reasonable attorney's fees and costs.

## SECOND CAUSE OF ACTION – FALSE IMPRISONMENT

56. Plaintiff repeats, re-alleges, and incorporates by reference all of the paragraphs above as more fully stated herein.

57. Defendants intentionally deprived Plaintiff of the freedom of movement by use of physical barriers, force and threats of force.

58. Plaintiff did not consent.

59. Plaintiff was harmed.

60. Defendants' conduct was a substantial factor in causing Plaintiff's harm.

61. Defendants acted with oppression, and/or malice, and conscious disregard of the rights of others, thereby entitling Plaintiff to punitive damages in an amount according to proof and a finder of fact at trial.

## THIRD CAUSE OF ACTION - INVASION OF PRIVACY

62. Plaintiff repeats, re-alleges, and incorporates by reference all of the paragraphs above as though fully stated herein.

63. Defendants' outrageous, abusive, and malicious act constituted intrusion upon Plaintiff's seclusion.

64. Defendants intruded upon the solitude or seclusion, private affairs or concerns of Plaintiff.

65. The intrusion was substantial, and of a kind that would be highly offensive to an ordinarily reasonable person.

66. The intrusion caused Plaintiff to sustain injury, damage, loss or harm in the form of emotional distress and actual injury as further described herein.

67. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered damages in an amount to be determined at trial.

/ / /

68. Defendants acted with oppression, and/or malice, and conscious disregard of the rights of others, thereby entitling Plaintiff to punitive damages in an amount according to proof and a finder of fact at trial.

### FOURTH CAUSE OF ACTION – ASSAULT

69. Plaintiff repeats, re-alleges, and incorporates by reference all of the paragraphs above as more fully stated herein.

70. Defendants acted intending to cause harmful or offensive contact to Plaintiff.

71. Plaintiff reasonably believed that he was about to be touched in a harmful or offensive manner.

72. Plaintiff did not consent to Defendants' conduct.

73. Plaintiff was harmed.

74. Defendants' conduct was a substantial factoring causing Plaintiff's harm.

75. Defendants acted with oppression, and/or malice, and conscious disregard of the rights of others, thereby entitling Plaintiff to punitive damages in an amount according to proof and a finder of fact at trial.

### FIFTH CAUSE OF ACTION - BATTERY

76. Plaintiff repeats, re-alleges, and incorporates by reference all of the paragraphs above as more fully stated herein.

77. Defendants touched Plaintiff with the intent to harm of offend her.

78. Plaintiff did not consent to the touching.

79. Plaintiff was harmed and offended by Defendants' conduct.

80. A reasonable person in Plaintiff's situation would have been offended by the touching.

81. Defendants acted with oppression, and/or malice, and conscious disregard of the rights of others, thereby entitling Plaintiff to punitive damages in an amount according to proof and a finder of fact at trial.

## SIXTH CAUSE OF ACTION – NEGLIGENCE

82. Plaintiff repeats, re-alleges, and incorporates by reference all of the paragraphs above as more fully stated herein.

83. Defendants' outrageous, abusive and intrusive acts as described herein constituted negligence.

84. Defendants breached a duty imposed by law and contract.

85. The breached of such duty proximately caused injury to Plaintiff.

86. The injury resulted from an occurrence of the nature of which the statutes were designed to protect.

87. Plaintiff was a member of the class of persons the statute was designed to protect.

88. Defendants' conduct as described herein was wrongful conduct in that the Defendant conducted their business in an abusive, oppressive, and harassing manner.

89. Defendants owed Plaintiff a duty to refrain from unlawful debt collections and wrongful repossession.

90. Defendants' unlawful conduct demonstrates their negligent failure to adequately train and supervise those collecting debts allegedly owed to Defendants.

91. Defendants' wrongful conduct as described herein actually and proximately caused the Plaintiff severe and serious physical injury and emotional distress as described above.

92. It was clearly foreseeable that Defendants' actions as described herein could cause severe and serious emotional distress.

93. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered damages in an amount to be determined at trial.

94. Defendants' repossession agent showed up to Plaintiff's home to repossess this vehicle. When Plaintiff informed that he had arrangements with the creditor and did not intend to allow Defendant's agent to repossess the car, Defendant's

agent was willing and, in fact did resort to psychical contact to take the vehicle. These unlawful acts caused Plaintiff physical and emotional injury.

95. Defendants were aware of the probable dangerous consequences of their conduct, and willfully and deliberately failed to avoid those consequences.

96. Defendants acted with oppression, and/or malice, and conscious disregard of the rights of others, thereby entitling Plaintiff to punitive damages in an amount according to proof and a finder of fact at trial.

**SEVENTH CAUSE OF ACTION - NEGLIGENT HIRING, SUPERVISION, RETENTION, AND TRAINING**

*(as to Defendant S.D.A.R., INC.)*

97. Plaintiff repeats, re-alleges, and incorporates by reference all of the paragraphs above as though fully stated herein.

98. Defendants were negligent in the hiring, retention, training, and/or supervision of its employees and/or agents. Defendants actions and omissions constitute negligence in that they owed Plaintiff a duty to hire, retain, train, and/or supervise its employees properly, said duty was breached, and said breach was the proximate cause of damages suffered by Plaintiff.

99. The actions and omissions of Defendants as described herein constitute grossly negligent hiring, retention, training, and/or supervision in that they owed Plaintiff a duty to hire, retain, train, and/or supervise its employees properly, said duty was breached, said breach was the proximate cause of damages suffered by Plaintiff, and Defendants actions demonstrate a want of scant care and an indifference to the rights of Plaintiff. The actions of Defendants were willful, malicious, and wanton. The actions of Defendant were highly unreasonable and demonstrate an extreme departure from the ordinary care of a reasonably trained and supervised repossessions agent.

100. Plaintiff suffered damages due to Defendants actions in an amount to be determined by proof by the finder of fact at trial.

101. Defendants' repossession agent showed up to Plaintiff's home to repossess this vehicle. When Plaintiff informed that he had arrangements with the creditor and did not intend to allow Defendant's agent to repossess the car, Defendant's agent was willing and, in fact did resort to psychical contact to take the vehicle. These unlawful acts caused Plaintiff physical and emotional injury.

102. Defendants were aware of the probable dangerous consequences of their conduct, and willfully and deliberately failed to avoid those consequences.

103. Despite these unlawful acts Defendants ratified the acts of their repossession agent by failing to terminate, discipline or reprimand him.

104. Defendants acted with oppression, and/or malice, and conscious disregard of the rights of others, thereby entitling Plaintiff to punitive damages in an amount according to proof and a finder of fact at trial.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that this Honorable Court grant the following relief from Defendants:

1. Actual damages;
2. Statutory damages;
3. Treble damages pursuant to Cal. Civil Code § 3345;
4. Punitive damages;
5. Plaintiff's reasonable attorney fees;
6. Costs of the action; and
7. For such other and further relief as the Court may deem just and proper.

Dated:

                                          ___/s/ Andre L. Verdun_____
                                          Andre L. Verdun, ESQ.
                                          Attorney for Plaintiff

## DEMAND FOR JURY TRIAL

**NOW COMES** Plaintiff, MARK RUBINSTEIN, by and through his attorneys, Ronald Wilcox and Andre L. Verdun, and hereby demands a trial by jury in the above-captioned matter.

Dated:

                                                                  /s/ Andre L. Verdun
                                                               Andre L. Verdun, ESQ.
                                                               Attorney for Plaintiff

COMPLAINT FOR DAMAGES

Rubinstein v. S.D.A.R., INC.

℧JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
Mark Rubinstein

**DEFENDANTS**
S.D.A.R., INC., an corporation doing business as SAN DIEGO AUTO RECOVERY, and TREVOR ARLIE PRATT

**(b)** County of Residence of First Listed Plaintiff: San Diego
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant: San Diego
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Andre L. Verdun (265436) 401 West A Street, Ste 925, San Diego, CA 92101 (619) 238-5700

Attorneys (If Known)
Unknown

'13CV0106 MMA KSC

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)
- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 |  | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 365 Personal Injury - Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 320 Assault, Libel & Slander / ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 340 Marine / **PERSONAL PROPERTY** | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☒ 480 Consumer Credit |
|  | ☐ 345 Marine Product Liability / ☐ 370 Other Fraud | ☐ 690 Other |  | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle / ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability / ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury / ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability |  | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise |  |  | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 740 Railway Labor Act | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 790 Other Labor Litigation | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | **FEDERAL TAX SUITS** |  |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 871 IRS—Third Party 26 USC 7609 |  |
|  |  | ☐ 555 Prison Condition | **IMMIGRATION** | ☐ 950 Constitutionality of State Statutes |
|  | ☐ 440 Other Civil Rights |  | ☐ 462 Naturalization Application |  |
|  |  |  | ☐ 463 Habeas Corpus - Alien Detainee |  |
|  |  |  | ☐ 465 Other Immigration Actions |  |

## V. ORIGIN (Place an "X" in One Box Only)
- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
Title 15 USC 1692 et seq

Brief description of cause:
Illegal Debt Collection (repossession without a legal right)

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

**DEMAND $** Proof

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions): JUDGE _____ DOCKET NUMBER _____

DATE: 01/15/2013

SIGNATURE OF ATTORNEY OF RECORD: /s/ Andre L. Verdun

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____